IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Action No. **3:16-CR-283-L** |
| | § | |
| **VICTOR MANUEL SOLORZANO** | § | |

## MEMORANDUM OPINION AND ORDER

The court held a pretrial conference on April 6, 2017, to address pending pretrial motions and other matters and indicated that it would enter a separate order setting forth the court's rulings on the parties' motions and objections. For the reasons stated during the pretrial conference and herein explained, the court: **grants** the Government's Motion in Limine (Doc. 34) to the extent herein set forth; **denies as moot** Defendant's Motion in Limine (Doc. 40); **grants in part and denies in part** Defendant's Motion in Limine (Doc. 41) regarding expert testimony; **denies as moot** Defendant's Request for Notice of Intent to Use Rule 404(b) Evidence (Doc. 42); **overrules** Defendant's objection to the admission of evidence in the Government's Rule 404(b) notice (Edgar Solorzano's testimony); and **grants** Defendant's Motion for Leave (Doc. 64) and related Motion in Limine Under Rule 609(b).

## I.     Motions

### A.     Government's Motion in Limine (Doc. 34)

#### 1.     Police Procedures or Protocol

The Government moves to preclude the admission of evidence, questioning of the Government's witnesses, and argument by Defendant regarding police procedure and whether proper police procedure or protocol was followed. Defendant contends in his response to the Government's

motion that such evidence is relevant to his defense of self-defense.  Defense counsel argued during

the pretrial conference that the agents who executed the tracking device warrant did not follow

proper police procedure because: (1) the state warrant was signed by one of the federal agents as an

affiant, whereas state law requires a tracking device warrant to be signed by an attorney; (2) the agent

who attempted to attach the tracking device to Defendant's vehicle raised his hands when confronted

by Defendant and ran away from Defendant; and (3) the agent failed to identify himself as a law

enforcement officer.  Defense counsel contends that the agents' actions in executing the tracking

device warrant and their failure to follow proper police procedure caused Defendant to respond the

way he did because he believed that his vehicle was being burglarized.  Defense counsel asserts that

there will be testimony presented at trial that Defendant felt threatened because the two agents were

dressed in dark clothing, it was dark outside when the incident occurred, and the area is a high crime

area.  Defense counsel, therefore, contends that their expert should be allowed to testify regarding

proper police procedure in executing a tracking device warrant, and they should be allowed to cross-

examine the Government's witnesses and agents regarding this topic.

Defendant designated Peter Schulte ("Schulte") as an expert to testify on his behalf.  In

Defendant's Designation and Notice of Expert Testimony, Defendant states that Schulte is a licensed

peace officer and attorney and will testify regarding:

> proper law-enforcement methodology and protocol in situations such as what
> occurred in this case when Defendant and law enforcement made contact. Topics will
> include self-defense, defense of a third-person, defense of property, securing and
> executing warrants, effectuating warrants, and how to engage in a negative or hostile
> situation. Mr. Schulte's opinion will indicate that proper law-enforcement
> methodology and protocol were not followed in this case. He will also opine that the
> warrants were not executed properly. In addition, he will opine about the defendant's
> right to self-defense and the defense of property.

Def.'s Expert Notice  1 (Doc.  53).

Even if Schulte is qualified to testify as an expert regarding these matters, expert testimony on these topics would be improper. First, Schulte's proposed testimony regarding a person's right to self-defense, including the right to defend oneself, others, and a person's property is not proper expert testimony, as it involves purely legal matters, which will be addressed in the court's instructions to the jury. *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997) ("[O]ur legal system reserves to the trial judge the role of deciding the law for the benefit of the jury. Moreover, allowing attorneys to testify to matters of law would be harmful to the jury.") (citations omitted).

Second, any discussion, whether in the form of testimony, argument, questioning, or evidence, regarding proper procedure and protocol for obtaining and executing a tracking device warrant or any other type of warrant is not relevant, as required by Federal Rule of Evidence 401, to the offenses charged or Defendant's theory of self-defense. *See United States v. Alvarado*, 808 F.3d 474, 495 n.14 (11th Cir. 2015) (citing *United States v. Wilk*, 572 F.3d 1229, 1235 (11th Cir. 2009), for the proposition that "where defendant relied on a theory of self-defense in his prosecution for shooting of police officers, district court properly excluded expert testimony that officers' entry into defendant's home violated police procedures *because it was defendant's perception, not the officers' compliance with procedure, that was relevant in determining self-defense*") (emphasis added); *United States v. Ruoco*, 765 F.2d 983, 995 (11th Cir. 1985) (affirming the district court's exclusion of defense expert testimony regarding the adequacy of the arrest procedure used by the ATF to support the defendant's argument that he acted in self-defense on the mistaken belief that an ATF undercover agent was a mafia hit man because the professional standard for an undercover arrest *was not relevant to the defendant's subjective intent when the agent sought to apprehend him absent evidence that the defendant knew of such professional standard at the time*, and the expert's

opinion that the defendant might have been confused or mistaken as to the agent's identity or that the average citizen might have expected the agent to have acted differently in attempting to arrest the defendant would be valueless, as the expert could not offer anything beyond the understanding and experience of the average citizen) (emphasis added); *United States v. Swint*, No. 12-08080-PCT-PGR, 2012 WL 3962704, at *2 (D. Ariz. Sept. 11, 2012) (citing *Wilk*), *aff'd*, 566 F. App'x 618 (9th Cir. 2014) ("Dr. Streed's opinion that the officers' actions constituted excessive force is not relevant because the issue in *Defendant's self-defense claim is the reasonableness of his belief that his use of force was necessary, not whether the officers acted unreasonably or contrary to proper training and procedures*.") (emphasis added); *United States v. Korbe*, No. 2:09-CR-00005, 2010 WL 4639042, at *2-5 (W.D. Pa. Nov. 8, 2010) (citing and discussing *Wilk* and *Rouco* in excluding expert testimony regarding police arrest procedures and whether proper police procedure was followed in the arrest of the defendant). Accordingly, while the events as *perceived* by Defendant is relevant, evidence of police procedure and whether such procedures were followed, whether in the form of expert testimony or otherwise, is not relevant or admissible under Federal Rules of Evidence 401, particularly since there is no indication that Defendant was aware of standard police procedures or protocol at the time.

Moreover, expert testimony as to whether proper police procedure was followed would mislead the jury by creating the impression that Defendant's criminal responsibility is contingent upon the agents' following standard police procedure for the execution of a warrant. *Ruoco*, 765 F.2d at 995; *Alvarado*, 808 F.3d at 495 (concluding that evidence of police procedure "would have potentially misled the jury, wasted time, and caused undue delay, in violation of Federal Rule of Evidence 403.") Thus, even if relevant, the probative value of this evidence is substantially

outweighed by the danger of confusion of the issues or misleading the jury. Fed. R. Evid. 403. Accordingly, the court will not allow evidence, questioning, or argument in any form regarding the agents' compliance or noncompliance with procedure or protocol. Defendant, however, may present evidence of his *perception* of the events that occurred.

Finally, although Defendant does not specifically argue that the agents are not entitled to protection under 18 U.S.C. § 111 because proper procedure for obtaining or executing the tracking device warrant was not followed, the court addresses any such argument out of an abundance of caution to avoid any further argument and potential delay in the trial of this case. Specifically, the court determines that evidence of whether proper state procedure was followed in obtaining or executing the warrant and whether the federal agents were executing a state warrant is not relevant to whether the alleged assault of the agents occurred while they were engaged in or on account of the performance of official duties. 18 U.S.C. § 111. "An officer is considered to be engaged in his official duties and thus protected by the statute, 18 U.S.C. § 111, if he is performing the functions for which he is employed, if he is acting in good faith and in the colorable performance of his duties, and if he is not on 'a frolic of his own.'" *United States v. Dombrowsky*, 111 F. App'x 716, 718 (5th Cir. 2004) (quoting *United States v. Lopez*, 710 F.2d 1071, 1074 (5th Cir. 1983)). The protection offered to an officer under section 111 is not lost simply because, for example, an arrest is effected without probable cause or because a federal officer assists in a state criminal investigation and the enforcement of state criminal laws. *Lopez*, 710 F.2d at 1074-75. Accordingly, the court will not allow evidence of proper police procedure or protocol for this purpose. The court's ruling in this regard, however, does not preclude Defendant from presenting evidence that the agents' conduct was beyond the reasonable scope of their employment. *See id.* at 1074.

For all of these reasons, the Government's motion to exclude evidence, questioning, and argument regarding police procedure and protocol and whether the agents acted in conformity with proper police procedure and protocol is **granted.**

### 2. Texas Law Regarding the Right to Use Deadly Force

The Government's motion as to argument or evidence regarding the right to use deadly force under Texas law is **granted** in light of the Fifth Circuit's opinion in *United States v. Kleinebreil*, 966 F.2d 945, 951 n.13 (5th Cir. 1992). Although evidence, argument, and questioning regarding Texas law and police procedure is irrelevant and will not be permitted, Defendant is entitled to put on evidence of self-defense, including evidence of whether he was unaware of the federal officer's identity and reasonably believed that the agents intended to harm him, his family, or property. *United States v. Alvarado*, 630 F. App'x 271, 274 (5th Cir. 2015) (citing *United States v. Ochoa*, 526 F.2d 1278, 1281 (5th Cir. 1976)). "In other words, the ultimate question is 'whether [the defendant] believed that he needed to defend himself against an assault by a private citizen.'" *Alvarado*, 630 F. App'x at 274 (citing *Kleinebreil*, 966 F.2d at 951).

### 3. Self-Defense Instruction

The Government's motion as to whether Defendant is entitled to a self-defense instruction if he resorted to excessive force is **carried**, as resolution of whether Defendant is entitled to such an instruction will depend on the evidence presented at trial.

### B. Defendant's Motion in Limine (Doc. 40)

The court **denies as moot** this motion, given the Government's response that it does not intend to refer to the investigations referenced in Defendant's motion. Further, as stated during the pretrial conference, the court will allow the Government to put on evidence of background

information regarding the investigation in this case, but the amount of any such evidence shall be limited as discussed during the pretrial conference.

### C.     Defendant's Motion in Limine (Doc. 41)

Defendant requests that the Government not elicit expert or witness testimony regarding "drug couriers, conspirator or distributors' activities, characteristics or mannerisms that are consistent with [his] conduct" or testimony comparing "[his] conduct to that of a profile of a drug courier, conspirator or distributor" without obtaining a prior ruling from the court outside of the jury's presence. Def.'s Mot. 1.

In its Notice of Expert Witness Designation on March 20, 2017, the Government designated Dallas Police Detective Michael Nunez as an expert in drug trafficking who will testify:

> about the characteristics and methods of street-level drug-dealers. He is expected to testify that based upon his training and job experience as a narcotic detective, as well as the physical evidence seized from Victor and Edgar Solorzano on November 19, 2015, that the methamphetamine seized from Victor and Edgar was inconsistent with personal use only and that the methamphetamine was possessed to distribute to others. He is also expected to testify that the $2,720 in cash seized from Victor are proceeds derived from illegal drug-sales. He is also expected to testify that firearms, such as the ones seized from Victor on November 19, 2015, are tools-of-the-trade of drug trafficking and that drug dealers commonly possess firearms to protect their drugs and drug-profits. Accordingly, his testimony is expected to show that Victor possessed a firearm in furtherance of a drug trafficking crime, as charged in Count Two.

Government's Notice 4-5 (Doc. 52). The Government contends that Det. Nunez should be allowed to testify as a drug trafficking expert because:

> "The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business." *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir.1995); *see also United States v. Pearce*, 912 F.2d 159 (6th Cir. 1990) (holding that a law enforcement officer may testify about methods and techniques to establish the modus operandi of narcotics distribution). Furthermore, the possession of

firearms in furtherance of drug trafficking has been appropriately opined by experts. *See United States v. Allen*, 269 F.3d 842 (7th Cir. 2011) (holding that expert testimony concerning the 'tools of the trade' and the methods of operation of those who distribute various types of narcotics including its relationship with firearms is admissible "because the average juror is unlikely to be knowledgeable") (internal citations omitted); see also *United States v. McDonald*, 933 F.2d 1519, 1521 (10th Cir.1991) (approving opinion that "street dealers frequently arm themselves to protect the merchandise and the money").

Government's Resp. 3.

As correctly noted by the Government, the Fifth Circuit in *Washington* held that "The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business, as such testimony often is helpful in assisting the trier of fact understand the evidence." *Washington*, 44 F.3d at 1283 (footnotes omitted). An expert, however, may not provide testimony in the form of legal conclusions. *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *see also United States v. Teel*, 299 F. App'x 387 (5th Cir. 2008) ("We further conclude that the district court properly barred Teel's expert from going beyond consideration of the conduct to offer legal conclusions regarding whether the assault on Williams constituted excessive force."). Further, an expert cannot specifically comment or indirectly comment by inference on the defendant's mental state in violation of Rule 704. *United States v. Gutierrez–Farias*, 294 F.3d 657, 663 (5th Cir. 2002).

Thus, Detective Nunez may testify, based on his experience, that the amount of methamphetamine seized is not consistent with personal use, but he cannot testimony that "the methamphetamine *was possessed to distribute to others*," as this suggests that Defendant's state of mind or intent was to distribute the methamphetamine seized to others. Government's Notice 4-5 (emphasis added). Likewise, Detective Nunez may testify that the amount of cash seized is

consistent with illegal drug sales, but the court will not allow him to testify that "$2,720 in cash seized from Victor *are proceeds derived from illegal drug[]sales*," which is a legal conclusion and speculative opinion testimony that impermissibly comments on the evidence . *Id.* (emphasis added). For the same reason, Detective Nunez may testify that firearms are "tools of the trade" and that drug dealers commonly possess firearms to protect their drugs and profits; however, the court will not allow him to testify "that  firearms, *such as the ones seized from Victor on November 19, 2015*, are tools-of-the-trade of drug trafficking." *Id.* (emphasis added).  Accordingly, for the reasons stated, the court **grants in part and denies in part** Defendant's motion.  Notwithstanding the court's ruling, the Government will still have the burden of proving up its expert at trial.

### D.	Defendant's Request for Notice of Intent to Use Rule 404(b) Evidence (Doc. 42)

Defendant's request for notice of intent to use Rule 404(b) evidence is **denied as moot**, as the Government filed the requested Rule 404(b) Notice (Doc. 46) on March 2, 2017.

### E.	Government's Rule 404(b) Notice and Defendant's Objections

The Government states in its Notice that it intends to offer evidence the following testimony of Edgar Solorzano, which will be corroborated by other evidence, including evidence seized from Victor's and Edgar's residences:

1.	Victor did not have a lawful job and sold methamphetamine for a living.

2.	Edgar often accompanied Victor when Victor sold methamphetamine, usually "ounce" quantities—"Os"—for $500 per ounce.

3.	Victor was always armed with a firearm—specifically, a "FN 5.7 pistol"—on these drug-runs.

4.	Victor used his tan-colored Chevrolet Tahoe to deliver methamphetamine.

5.	Edgar sometimes "held" methamphetamine for Victor.

Government's Notice 5.  The Government asserts that it anticipates that Defendant will take the position at trial that he did not knowingly possess the methamphetamine found in his residence next to his wallet and papers. The Government contends that it anticipates that Defendant's attorney will argue, as he did at the detention hearing, that the three grams of methamphetamine (residue from a gallon-sized ziplock bag) is only a "user amount" and, thus, Defendant did not possess the methamphetamine with intent to distribute the drug (Count One).  In addition, the Government asserts that it anticipates that Defendant attorney's will argue at trial, as he did in Defendant's detention hearing, that the firearms charged seized from Defendant's residence (Count Two) were lawfully possessed and, therefore, he did not possess them in furtherance of the drug trafficking crime charged in Count One.  The Government contends that the proposed testimony of Edgar Solorzano is admissible under Rule 404(b) because it is relevant to issues other than Defendant's character, for example, that Defendant knowingly possessed methamphetamine with the intent to distribute (Count 1); and knowingly possessed a firearm in furtherance of his commission of a drug trafficking crime (Count 2). The Government contends that there is no danger of undue prejudice in comparison to the probative value of the evidence, and any prejudice can be cured with a limiting instruction.  Defendant disagreed and argued during the pretrial conference that this evidence is not admissible under Rule 403.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity with the character.  Fed. R. Evid. 404(b)(1).  Such evidence, however, is admissible for other purposes, such as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2). Extrinsic evidence must satisfy rule 404(b), whereas "[i]ntrinsic evidence does not implicate Rule

404(b)." *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994). Evidence is "intrinsic" if it and "evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *Id.* (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)). "'Other act' evidence is 'intrinsic' when the evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *Id.* at 825. Intrinsic evidence is admissible so the jury may evaluate all the circumstances under which the defendant acted. *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992); *United States v. Maceo*, 947 F.2d 1191, 1198 (5th Cir. 1991) (citing *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989)).

The test of whether extrinsic evidence is admissible is set forth in *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978) (en banc). Under this test, first, the extrinsic evidence must be relevant to an issue other than a defendant's character. *Id.* at 911. Second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *Id.*

While it is a close call, the court treats the proposed testimony of Edgar Solorzano as extrinsic and concludes that it is admissible under Rule 404(b), as it is relevant to Defendant's intent, knowledge, and motive with respect to the offenses charged in Counts One and Two, and the probative value of the evidence is not substantially outweighed by undue prejudice. Additionally, Edgar Solorzano's proposed testimony regarding these limited matters will not confuse the issues, mislead the jury, waste time, and there is no indication at this time that the testimony will be cumulative of other evidence. Fed. R. Evid. 403. Moreover, any potential prejudice can be cured with

a limiting instruction. *United States v. Gonzalez*, 328 F.3d 755, 760 n.2 (5th Cir. 2003). Defendant's objection regarding this evidence is, therefore, **overruled**.

**F.      Defendant's Motion for Leave and Motion in Limine Under Rule 609(b) (Docs. 64, 65)**

The court **grants** these motions by Defendant (Docs. 64, 65), given the Government's statement to the court during the pretrial conference that it does not intend to elicit testimony or evidence regarding Defendant's juvenile convictions. Further, although the Government stated that it did not intend to use Defendant's juvenile convictions, except for impeachment purposes, Federal Rule of Evidence 609(d) generally precludes the use of juvenile adjudications for such purpose and admission of such evidence would require the court to find that the evidence is "necessary to fairly determine guilt or innocence." Fed. R. Evid. 609(d); *see also United States v. Decker*, 543 F.2d 1102, 1104 (5th Cir. 1976) (same). Moreover, if Defendant does not testify, this issue will be moot, as Rule 609 applies only when a person testifies.

**II.      Conclusion**

For the reasons stated in this order and during the pretrial conference, the Government's Motion in Limine (Doc. 34) is **granted** to the extent herein set forth; Defendant's Motion in Limine (Doc. 40) is **denied as moot**; Defendant's Motion in Limine (Doc. 41) regarding expert testimony is **granted in part and denied in part**; Defendant's Request for Notice of Intent to Use Rule 404(b) Evidence (Doc. 42) is **denied as moot**; Defendant's objection to the evidence in the Government's Rule 404(b) notice (Edgar Solorzano's testimony) is **overruled**; Defendant's Motion for Leave (Doc. 64) and related Motion in Limine Under Rule 609(b) (Doc. 65) are **granted**.

*Any requests for limiting instructions by the parties must be brought to the court's attention at the time the evidence is being offered. Further, any witness who testifies pursuant to Rule 702 of the Federal Rules of Evidence may not be referred to as an "expert" witness at any time during voir dire to the conclusion of the trial, except at a bench conference or when the jury or witness is not in the courtroom. Finally, in granting any portion of the parties' motions, the court orders that such matters may not be mentioned, alluded to, or referred to in the presence of the voir dire panel, witnesses, or the jury unless the parties believe that the door has been opened, in which case the party seeking to introduce evidence or argument must first approach the bench to obtain a ruling on the matter.*

**It is so ordered** this 10th day of April, 2017.

Sam A. Lindsay
United States District Judge